(8 App. Div. 93)

### SLOAN v. HUNTINGTON et ux.

(Supreme Court, Appellate Division, Third Department. July 7, 1896.)

1. FRAUDULENT CONVEYANCES—EVIDENCE.

An insolvent debtor transferred all his property to his wife. Both of them knew at the time that he was insolvent. The debtor testified in an action to set aside the transfer that he made it "to prevent the sheriff from slipping in and slaughtering my property. * * * I wanted to

transfer my property in a way to protect my creditors. * * * I felt very much humiliated and chagrined to think I had to beat any man a penny." The expressed consideration for the transfer of the personalty was the wife's agreement to pay certain debts, not including the debt due plaintiff. *Held,* that the transfer should be set aside as fraudulent.

2. SAME—EQUITABLE TITLE OF GRANTEE.

A conveyance of land by an insolvent debtor to his wife cannot be sustained on the ground that the land was purchased with the wife's money, but that the deed, by mistake, was taken in the husband's name, where it appears that the husband had obtained a rating by a commercial agency on his apparent ownership of the land, and thereby secured credit.

Appeal from special term, Chemung county.

Action by Samuel Sloan against Charles E. Huntington and Julia Huntington, in the nature of a creditors' bill, to set aside a transfer made by defendant Charles E. Huntington to his wife, defendant Julia Huntington, of all his property, as in fraud of creditors. The complaint was dismissed, and plaintiff appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Horace McGuire, for appellant.

Richard H. Thurston, for respondents.

LANDON, J. The defendant Charles E. Huntington, by his bill of sale and by his deed, transferred, June 11, 1894, all his real and personal estate to his wife, the defendant Julia Huntington. At that date he was engaged in the plumbing and gas-fitting business at Elmira, and had been so engaged since November, 1889. He had a store, a stock of goods, an equipment of supplies and tools, and outstanding accounts due him, all of the nominal value of $7,000, and of the actual value of about $5,000. He had also the legal title to some real estate which was conveyed to him November 1, 1890, of the actual value of $3,500, subject to a mortgage of $2,500, which he and his wife placed upon it shortly after he had obtained the rating with Dun & Co. as hereafter mentioned. When he made these transfers to his wife, both of them knew that he was insolvent. He testifies that he made them "to prevent the sheriff from slipping in and slaughtering my property. * * * I wanted to transfer my property in a way to protect my creditors. * * * I felt very much humiliated and chagrined to think I had to beat any man a penny." This is a plain enough confession that he clearly understood the difference between what he wanted to do and what, under the stress of his insolvency and his desire to keep control of his property, he actually did do. His wife assisted as he advised. The expressed consideration for the transfer of the personal property was the wife's agreement to pay certain of his debts and liabilities, not including the debt due the plaintiff. As soon as the transfers were executed and delivered, a clerk of the lawyer who drew the papers went to the store, and, as agent of the wife, assumed, by his presence and words and handling the door key, to take possession of the store and its contents, and to install the husband as manager of the business for his wife. The

usual business was not suspended at all. The husband continued it as before, except that the word "Manager" was added to his name upon the accounts thereafter kept. Before the husband and wife gave the mortgage upon the real estate as above mentioned, the husband, by representing himself to be its owner and by his other ·representations, procured Dun & Co. to give him a favorable rating upon their books. It is well known that the rating thus given is relied upon among traders as showing the amount of credit which may be given to the person rated. Relying upon this rating, the plaintiff sold the defendant, the husband, goods in his line of trade in 1893–94, and, after the transfer to the wife, obtained judgment upon account thereof, upon which execution had been issued and returned unsatisfied before the commencement of this action. Of course, the effect of the transfers has been to hinder and delay the plaintiff in the collection of his debt, and thus far to defeat him altogether; and· upon the evidence it is apparent that such must have been the intent of both husband and wife in respect to all creditors not provided for by the wife's agreement. Stripped of all disguises, the fact appears that the transfers were made to enable the husband to retain the management and control of his property with-·out annoyance from any creditor, except such as he chose to pro-·vide for, and to this scheme the wife lent her name and co-operation.

When an insolvent honestly sells and delivers, at full value, to some of his creditors, all that he has in payment of what he owes them, the fact that he has not enough to satisfy all of them will not suffice to impeach the honest sale. But when he juggles the transaction in such a way that he still retains possession of the property, under cover of being manager for his wife, to whom he makes the transfer, and in whose favor he resurrects stale claims, and, instead of selling his property to his creditors, takes his wife's promise to pay some of them and protect him against them, the claim of honesty, of delivery, and of change of possession strikes the mind as a mere pretense. If the wife was her husband's creditor, that fact does not permit her to co-operate with him in a scheme to keep his other creditors at bay.

The transfer of the real estate is sought to be defended upon the ground that, although the husband had the legal title, the wife had the equitable title. Husband and wife testify that when the real estate was purchased, November 1, 1889, it was purchased by the wife, and it was intended that the deed should be taken in her. name; but, by mistake, the scrivener wrote in the husband's name,· instead of hers. The mistake was soon after discovered, but was not corrected. In the same month of November, the husband, then about 60 years of age, engaged for the first time in his life in the plumbing and gas-fitting business. By representing himself to · Dun's agency as the owner of the real estate in question, he procured the rating which induced the plaintiff to give him credit. Who should suffer? The wife, who, by her negligence or consent, permitted her husband to hold the legal title,· and thus to procure the fa-. vorable rating, and thereby the plaintiff's goods; or the plaintiff, who

was deceived by the rating,—that is, by the negligence or consent of the wife? The learned trial judge thought that "the wife was not bound to anticipate that her husband would make false representations as to his interest in that property." That may be so as to express false representations. But the deed was recorded, and the wife does not deny her knowledge of that fact; and, knowing that, she knew that that record constantly bore false witness as to her husband's credit,—a record corroborative of his representation, and which was consulted by Dun & Co. before they made the rating. We think that she should bear the loss, rather than the plaintiff. We are cited to no cases in this state upon the like facts, but the doctrine has support in other states. Minnich v. Shaffer (Ind. Sup.) 34 N. E. 987; Bank v. Hamilton, 34 N. J. Eq. 158.

The judgment should be reversed; new trial granted; costs to abide the event. All concur.